## SUPREME COURT.

### MATTER OF MAX LOWENSTEIN.

A. obtains judgment against three partners, J. K. and L., by service of process on K. alone, who allows judgment to be taken for a few dollars less than the amount claimed.

*Held*, that the defendants not served, could not be proceeded against by warrant, under the non-imprisonment act, founded upon such judgment, even though they were shown to be in possession of partnership property which they refuse to apply to the payment of the judgment.

It is not, properly speaking, a judgment against the party not served, but, as to him, only against his interest in the joint property—against the *property* not the *person*.

It is against the policy of the law to allow one member of a firm, by assignment or otherwise, to give a preference to creditors against the wishes of the other members of the firm.

#### HABEAS CORPUS.

*At Chambers, October* 1851. In July 1851, M. & L. Lippman filed their complaint against E. Kantorwich, J. Jorlson and M. Lowenstein, claiming $415·12, as due by them on a joint indebtedness to the plaintiffs. Kantorwich, on 31st July, admitted service of the summons, and offered to allow judgment to be taken pursuant to § 385 of the Code, for $410 and costs, and waived notice of adjustment of costs. On 1st August the plaintiffs filed notice of their acceptance of the offer and entered judgment against all three of the defendants for the $410 and costs. On the same day Kantorwich made affidavit that Lowenstein was his partner and had received $2000 cash for the firm, and $1600 in goods, which he converted into cash or notes, and still held. On the 11th day of August the plaintiffs applied for and obtained a Stilwell warrant against Lowenstein alone, alleging that he was indebted to them on a judgment on contract against him and the other defendants; that they requested him to apply the funds of the firm in his hands, mentioned in K's affidavit, to the payment of the judgment, but that he refused to do so. Lowenstein denied that he had property of the firm, or that he refused to apply it to the payment of the judgment, or that he owed the

plaintiffs any thing, or that the judgment was against him; and also denied the specific charges made by Kantorwich.

A habeas corpus was issued on behalf of Lowenstein, and the same issues were joined on it.   The judgment was proved in the form above stated, and the parties were at issue as to the facts:

1. Whether Lowenstein was a partner; and

2. Whether he had partnership property;

3. Whether he refused to pay as alleged.

And on the point of law, whether such a warrant could issue against Lowenstein, on such a judgment, even if he was a partner and the other facts were found against him.

The evidence showed that Lowenstein was a partner as early as January last and that he received property of the firm and refused to apply it to the payment of this judgment.   This left only the question of law to be passed upon.

Mitchell, Justice.—The provisions of the law allowing judgment against joint debtors when process was served on only one of them, have varied from time to time, and as they varied, their effect has been varied under the decisions of the court.   Under the revised laws of 1813 (1 *R. L. of* 1813, *p.* 521, § 13), it was enacted that *all* the defendants should be answerable *separately* for the debts; and the plaintiff should have judgment and execution against *all* " in the *same manner* as if they had all been taken and brought into court," but *execution* was not to issue against the body or separate property of those not served.

Under this act it was held that the judgment was *prima facie* evidence of the liability of the defendant not taken, and of the extent of his liability—but that he could, by special pleading, show that he was not such joint debtor.

The Revised Statutes altered the law, omitting the provision that all the defendants should be answerable separately for the debt, and declaring that the judgment should be evidence against the defendant not served, " only of the extent of the plaintiff's demand *after* the liability of such defendant should have been established by other evidence " (2 *R. S.* 377, § 1, 2), &c.

Under the statute it was held by two of the judges that the defendant not taken might be sued on the judgment, and that he might show on the plea of *nul tiel record* that he was not a joint

contractor.   The point actually decided, however, was only that on such plea he might make that defence, and that the judgment alone was not *prima facie* evidence against him.   It was not necessary to decide whether the action could be sustained or not, and all that was said on that subject might be deemed as merely the opinions of the individual members of the court (Marvin vs. Kumbel, 23 *Wend.* 293).   Since then, in the Court of Appeals (in Oakley vs. Aspinwall, 4 *Comst.* 514), it was held that the plaintiff in such case had no demand against the debtors arising upon *judgment*; and that the judgment was of no force against the party not brought into court, except such as was *expressly* given to it by statute; and an attachment against the defendant, not taken as an absent debtor founded on an affidavit stating that the plaintiff had a demand against the two *arising upon judgment*, was held bad.   This is in accordance with the dissenting opinion of Justice BRONSON, in Marvin vs. Kumbel, above quoted, who held that an action of debt would not lie on such a judgment; and it has been held that such a judgment obtained in another state was void in our courts.

The decision that there was no demand against the defendant arising upon judgment, was substantially a decision that the judgment was not against him within the meaning of the act in question.*   If the judgment were, properly speaking, against the defendant, it merged the original cause of action, and the plaintiff's demand was no longer on contract.   The Court of Appeals, therefore, in holding that the plaintiff has not a demand arising on judgment, considered the original contract the only source of liability of the absent defendant.

The Code has still further, or more clearly limited the effect of such a judgment.   It does not, as the laws of 1813 and 1830 did, enact that judgment should be against all the defendants in *the same manner as if all had been served with process ;* but directly limits and qualifies the judgment, allowing it to be against all the defendants thus jointly indebted, and then imposing this limitation " *so far only* that it may be enforced against the joint property of all."   This is a strict limitation, and makes it a judgment only against the property and not against

* D'Arcy vs. Ketchum, 11 *How. U. S. R.* 174.

the absent party. It is not now, properly speaking, a judgment against *him* any more than a judgment that a mortgagor be foreclosed of all equity of redemption, and that his property be sold and the mortgage debt be paid, is a judgment against the mortgagor, when he is not made liable for any deficiency. It is a judgment adverse to his rights and so against his interest or former title in the property, but is not a judgment against him personally.

Neither is it within the spirit of the non-imprisonment act to include such a defendant in its provisions. If a party has not been served with process, or sued, there are ample *remedies* furnished against him, if he has committed or contemplates any fraud. If he is about to remove his property out of the jurisdiction of the court to defraud his creditors, or is about to dispose of it; or has assigned, removed or disposed of it with the like intent, he can be proceeded against under that act, before any judgment is obtained (§ 4, sub. 1, 3, 4). The creditors, therefore, can suffer no injustice by waiting for a judgment. But if a judgment be obtained against the party and he has been served with process and had an opportunity to defend the suit, then the second subdivision properly applies to him and justly requires him to apply any rights of action or evidences of debt which he unjustly refuses to apply to the payment of any judgment against him. He unjustly refuses because he has personally had the opportunity to contest the claim, and it has been decided that *he* must pay it.

This subdivision also shows that it does not contemplate such a judgment as this; for if it applies, it applies in the full breadth of all its requirements; and then if this defendant refused to apply rights of action, evidences of debt, or his interest in any stock belonging to him alone and not to the partnership, he would be within the terms of this clause. The plaintiff might also in that case equally insist that here is a judgment against this defendant; that the statute speaks of *any judgment*, and so must include this; and then this inconsistency follows that a judgment that is to be enforced only against joint property, is enforced only against the sole property of one who never had the opportunity to contest it; and this in the very teeth of the statute

Matter of Lowenstein.

under which the judgment was obtained. In as much as this act where it does apply, gives a remedy as broad against the sole property of a defendant as against any property in which he is jointly interested with others, it can not be a lawful means of enforcing against a defendant not served with summons, a judgment which is entered against all the defendants " so far only as it may be enforced against the *joint property* of all and the special property and persons of those served.

When a statutory remedy is given, the one claiming its benefit has a right to all it gives, and if from the nature of his claim, it is plain that he is not entitled to all thus given, it is a fair conclusion that he is not within the statute.

Nor does public policy favor the plaintiffs' proceedings. It is against the policy of the law to allow one member of a firm to make an assignment giving a preference to creditors against the wishes of the other members of the firm. If these plaintiffs could succeed, they would secure a preference by concert with the defendant who confessed judgment to them—evidently that these plaintiffs might get the property in question for this defendant. Under this proceeding I am not to inquire whether the defendant holds back to secure all his creditors equally, or to defraud them. If the last be his object, there are means of frustrating him, which he could not well defeat when discharged from his imprisonment.

Let the prisoner, M. Lowenstein, be discharged from custody, and an order entered accordingly.